1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michael Robinson-Dorn (CA Bar 159507)
mrobinson-dorn@law.uci.edu
UC Irvine School of Law
Environmental Law Clinic
401 E. Peltason Dr.
P.O. Box 5479
Irvine, CA 92612-5479
(949) 824-1043

```
┌─────────────────────────────────┐
│             FILED               │
│   CLERK, U.S. DISTRICT COURT     │
│                                 │
│        MAY 11 2016              │
│                                 │
│  CENTRAL DISTRICT OF CALIFORNIA  │
│  BY                     DEPUTY   │
└─────────────────────────────────┘
```

*Attorneys for Plaintiff*
INLAND EMPIRE WATERKEEPER and ORANGE COUNTY COASTKEEPER

*Additional Plaintiffs' Counsel Listed On Next Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of ORANGE COUNTY COASTKEEPER; ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>AMERICAN ARROW, LLC; BRIDGET TORRES, DBA SMART PARTS AUTO & TRUCK DISMANTLING; and AMERICAN DISMANTLING, LLC.,<br><br>          Defendants. | Case No.: SACV15-01009 TJH (PLAx)<br><br>[Proposed] **CONSENT DECREE**<br><br>**JS-6**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.)** |

INLAND EMPIRE WATERKEEPER
Colin Kelly (Bar No. 266956)
Email: colin@coastkeeper.org
6876 Indiana Avenue, Suite D
Riverside, California 92506
Telephone: (951) 530-8823
Facsimile: (951) 530-8824

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
Email: colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Telephone: (714) 850-1965
Facsimile: (714) 850-1592

Suma Peesapati (Bar No. 203701)
speesapati@law.uci.edu
UC Irvine School of Law
Environmental Law Clinic
401 E. Peltason Dr.
Ste MPAA 310
Irvine, CA 92612-5479
(949) 824-8337

## CONSENT DECREE

1    The following Consent Decree is entered into by and between Plaintiffs Inland
2
3    Empire Waterkeeper and Orange County Coastkeeper ("Plaintiffs" or
4    "Waterkeeper"), and Defendants American Arrow, LLC; Bridgett Torres, DBA
5    Smart Parts Auto & Truck Dismantling ("Smart Parts"); and American Dismantling
6    ("Defendants"). The entities entering into this Consent Decree are each an individual
7    "Settling Party" and collectively "Settling Parties."

8    **WHEREAS**, Orange County Coastkeeper is a 501(c)(3) non-profit public
9    benefit corporation organized under the laws of the State of California;

10    **WHEREAS**, Inland Empire Waterkeeper ("Waterkeeper") is a program of
11    Orange County Coastkeeper;

12    **WHEREAS**, together, Inland Empire Waterkeeper and Orange County
13    Coastkeeper are dedicated to the preservation, protection, and defense of the
14    environment, wildlife, and natural resources of local surface waters;

15    **WHEREAS**, Defendants operate auto dismantling facilities, located at 15303
16    Arrow Highway, Fontana, California 92335 (American Arrow, LLC & American
17    Dismantling Inc.) and 8569 Beech Avenue, Suite A, Fontana, California 92335 (Smart
18    Parts)(collectively referred to as the "Facilities") and are currently regulated by the
19    Industrial Stormwater Permit under WDIDs 8 36I023413 (Smart Parts), and 8 36I023719
20    (American Dismantling, Inc.)

21    **WHEREAS**, Waterkeeper alleges that Defendants are the owners and operators of
22    the Facilities;

23    **WHEREAS**, Waterkeeper and Defendants are collectively referred to herein as the
24    "Parties";

25    **WHEREAS**, stormwater discharges associated with industrial activity at the
26    Facility are regulated pursuant to the National Pollutant Discharge Elimination System
27    ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board],
28    Water Quality Order No. 2014-57-DWQ ("Industrial Stormwater Permit"), and the

1  Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or
2  "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342.  These industrial
3  activities include, *inter alia*, vehicle maintenance, cleaning, and storage; vehicle fueling;
4  vehicle dismantling; used parts storage; outdoor vehicle and equipment storage; liquid
5  storage in above ground storage tanks.

6  **WHEREAS**, Waterkeeper contends that Defendants' operations at their Facilities
7  result in discharges of pollutants into area storm drains, the Santa Ana River, and
8  ultimately the Pacific Ocean (collectively "Receiving Waters") and contends that those
9  discharges are regulated by the Clean Water Act, Sections 301(a) and 402, 33 U.S.C. §§
10  1311(a), 1342.

11  **WHEREAS**, the Industrial Stormwater Permit includes the following requirements
12  for all permittees, including Defendants: (1) develop and implement a storm water
13  pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as
14  appropriate, best available technology economically achievable ("BAT") or best
15  conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3)
16  implement BAT and BCT through the development and application of Best Management
17  Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when
18  necessary, implement additional BMPs to prevent or reduce any pollutants that are
19  causing or contributing to any exceedance of water quality standards;

20  **WHEREAS**, on April 15, 2015 and June 29, 2015, Waterkeeper served
21  Defendants, the registered agents of Defendants, the Administrator of the U.S.
22  Environmental Protection Agency ("EPA"), the Executive Director of the State Water
23  Resources Control Board ("State Water Board"), the Executive Officer of the Santa Ana
24  Regional Water Quality Control Board, ("Regional Water Board"), and the Regional
25  Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice")
26  under Section 505(b)(1)(a) of the Federal Water Pollution Control Act ("Clean Water
27  Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the
28

1 | Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-
2 | DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

3 |      **WHEREAS**, on June 23, 2015, Waterkeeper filed a complaint against Defendants
4 | in the United States District Court, Central District of California (Civil Case No.
5 | EDCV15-04745) (*transferred and now* SACV15-01009 TJH (PLAx)) (hereinafter
6 | "Complaint");

7 |      **WHEREAS**, Waterkeeper, filed a first amended complaint on March 14, 2016,
8 | adding Smart Parts;

9 |      **WHEREAS**, Waterkeeper alleges Defendants are in violation of the substantive
10 | and procedural requirements of the Storm Water Permit and the Clean Water Act;

11 |      **WHEREAS**, Defendants deny all allegations and claims contained in the 60-Day
12 | Notice and the Complaint;

13 |      **WHEREAS**, the Parties have agreed that it is in their mutual interest and choose to
14 | resolve in full Waterkeeper's allegations in the 60-Day Notice and Complaint through
15 | settlement and avoid the cost and uncertainties of further litigation; and

16 |      **WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall
17 | be made in compliance with all applicable Federal and State laws and local rules and
18 | regulations.

19 |      **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**
20 | **SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS**
21 | **FOLLOWS:**

22 |    1.    The Court has jurisdiction over the subject matter of this action pursuant to
23 | Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

24 |    2.    Venue is appropriate in the Central District Court of California pursuant to
25 | Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities
26 | where the alleged violations took place are located within this District;

27 |    3.    The Complaint states claims upon which relief may be granted against
28 | Defendant pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.    Plaintiffs have standing to bring this action;

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    OBJECTIVES

6.    It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and to resolve those issues alleged by Waterkeeper in its 60-Day Notice and Complaint. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the Industrial Stormwater Permit and all applicable provisions of the Clean Water Act at their Facilities. Specifically, the Storm Water Permit requires Best Management Practices ("BMPs") be developed and implemented to achieve Best Available Technology ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"), and to achieve compliance with the applicable water quality standards.

## II.    AGENCY REVIEW, EFFECTIVE DATE, AND TERM OF CONSENT DECREE

7.    **Agency Review**: Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. Following the Federal Agencies' review, the Parties shall submit the Consent Decree to the Court for entry.

8.    Effective Date:  If the Federal Agencies do not provide comments on the Consent Decree that require changes to the Consent Decree, the term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the

1    Consent Decree, or the date on which the Federal Agencies provide notice that they

2    require no further review, whichever occurs earlier.

3        9.        **Term of Consent Decree**:  This Consent Decree shall terminate three (3)

4    years from the Effective Date unless there is an ongoing, unresolved dispute regarding

5    Defendants' compliance with the Consent Decree, in which case the Consent Decree will

6    terminate within fifteen (15) days of notice by the Settling Parties that the dispute has

7    been fully resolved.

8        10.       **Early Termination**: If any individual defendant should cease industrial

9    operations at the site and file a Notice of Termination ("NOT") under the Industrial

10   Stormwater Permit prior to the termination date of this Consent Decree, that defendant

11   shall contemporaneously forward to Waterkeeper confirmation of its submittal to the

12   Regional Water Board. Within ten (10) days of the Regional Water Board's approval of

13   the NOT, the defendant shall notify Waterkeeper in writing of the approval and remit all

14   outstanding payments, including stipulated payments, to Waterkeeper. In the event a new

15   successor or assign continues industrial operations at the site and assumes responsibility

16   for implementation of this Consent Decree pursuant to paragraph 38, the defendant shall

17   notify Waterkeeper within ten (10) days of the transition.

18   **III.        COMMITMENTS OF THE PARTIES**

19       11.       **Initial Industrial Storm Water Pollution Control Measures**: Defendants

20   shall develop and implement BMPs to prevent discharges or to reduce contamination in

21   storm water discharged from the Facility sufficient to achieve the Numeric Limits

22   detailed in Table 1 below. All BMPs shall be set forth in the SWPPP. Defendants shall

23   implement the BMPs in order to comply with the provisions of this Consent Decree, and

24   to comply with the requirements of the Storm Water Permit and all applicable provisions

25   of the CWA at the Facilities. If the BMPs do not effectively prevent discharges or reduce

26   contamination in storm water discharged from the Facilities in a manner sufficient to

27   achieve the Numeric Limits in Table 1, below, Defendants shall develop and implement

28   additional BMPs pursuant to this Consent Decree.

[Proposed] CONSENT DECREE        7        Case No. SACV15-01009 TJH (PLAx)

12.     In addition to maintaining the current BMPs at the Facilities, Defendants shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Listing BMPs identified herein and describing elements of the M&RP shall not preclude Defendants from implementing BMPs not listed, and does not require amendment of this Consent Decree in the event Defendants implement BMPs beyond those listed or substitutes BMPs or M&RP elements that are designed to achieve Table 1 Numeric Targets for those listed herein, or if changes in operations or industrial activities at their Facilities eliminate pollutant sources identified in the SWPPP and/or this Consent Decree, making the BMPs previously associated with those pollutant sources unnecessary.

13.     **Non-Structural BMPs**: Beginning the Effective Date, unless otherwise stated, Defendants shall implement the following non-structural BMPs to control the discharge of pollutants from the Facilities:

i. Site Sweeping. Defendants shall employ sweeping of the accessible paved areas of the Facility and shall also sweep non-accessible areas by hand or vacuum at least one (1) time per day during on each day that Defendants is actively operating to prevent the discharge of pollutants. Defendants shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log. The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred. The Sweeping Log shall be made available for inspection by Waterkeeper at any site inspection or within three (3) business days of a request by Waterkeeper

ii. Maintenance of Paved Surfaces. Within thirty (30) days of the Effective Date of this Consent Decree and annually thereafter, Defendants shall inspect and fill cracks and/or voids in existing concrete, asphalt, or other paved areas to facilitate more effective sweeping on-site;

iii.  Abandoned or Inutile Equipment Storage and Removal. Defendants shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading;

iv.  Materials Storage and Industrial Activities. Defendants shall isolate sources of contamination in covered containers or under cover with such areas contained by either berming or other containment sufficient, or Defendants shall store fuel storage tanks, motor oil and hydraulic oil drums and containers, and waste containers on top of secondary containment pallets to prevent the exposure of pollutants to storm water and non-stormwater, and to therefore prevent the discharge of pollutants, including the following materials storage and industrial activities.

v.  Vehicle and Equipment Management. Defendants shall implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked, maintained, fueled or stored in areas of the Facilities from which stormwater discharges, including the following:

1. Conducting all vehicle and equipment maintenance and fueling at the Facilities on asphalt or another impermeable surface;

2. Conducting all vehicle and equipment maintenance and fueling at the Facilities under cover;

3. Berming or otherwise containing the surface of the area where vehicle maintenance and fueling occurs (hereinafter "Maintenance and Fueling Area") in order to prevent the exposure of pollutants to stormwater and non-stormwater, and to therefore prevent the discharge of pollutants;

4. Dispensing with all petroleum products within the Maintenance and Fueling Area(s) only;

5. Cleaning the maintenance and fueling area as necessary to control track-off pollutants;

6. Constructing secondary containment adequate to capture all drips, spills, and leaks around the vehicle fueling area and for all other areas where 55-gallon drums are stored for on-site use;

7. Defendants shall place drip pans under equipment stored or parked for a week or longer, shall conduct weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment. Placing spill kits through their Facilities to ensure that any spilled substances and absorbent materials used in cleaning up spills are disposed of in accordance with all local, state, and federal laws and regulations;

8. Defendants shall not conduct routine (i.e., non-emergency) vehicle or movable equipment maintenance or repair at their Facilities in outdoor, uncovered areas from which stormwater discharges during rainfall events;

9. Defendants shall ensure that they do not conduct automobile dismantling or draining of fluids outdoors at their Facilities during precipitation events, and develop and implement plans to cover areas where automobile dismantling or draining of fluids occur prior to and during any precipitation events.

10. Within thirty (30) days of the Effective Date, all parts or other materials, other than external auto body parts, removed by Defendants from a car prior to being sold shall be stored under cover where they will not come in contact with precipitation.

vi.  Within thirty (30) days of the Effective Date, Defendants shall develop and implement plans to clean any bins or containers at their Facilities used to store scrap metal or dismantled car parts (e.g., engines, cores, brakes) that ensures the removal of all residue or remnant materials stored in any bin or container each time the container or bin is emptied, or at least four times per year.

vii.   Within thirty (30) days of the Effective Date, Defendants shall develop and implement plans that ensure that all materials stored in bins, containers, or containment structures at their sites are stored under cover and are not subject to contact with precipitation.

viii.   Within thirty (30) days of the Effective Date, Defendants shall develop and implement a plan to prevent track-off of pollutants from their Facilities

14.   **Structural BMPs**: Defendants shall develop and implement the following structural BMPs within thirty (30) days of the Effective Date, unless stated otherwise:

i.   Defendants shall install curbing or functionally equivalent measures to prevent storm water run-on to each of the properties that make up the Facilities.

ii.   Defendants shall construct secondary containment adequate to capture all drips, spills, and leaks around the vehicle Maintenance and Fueling Area(s) and for all other areas where 55-gallon drums are stored for on-site use;

iii.   Defendants shall divert storm water run-on along the eastern property line and direct it to discharge to Beech Avenue.

iv.   American Arrow shall install a rain gauge capable of measuring and recording rainfall from at least 0.1 inches.

v.   Within sixty (60) days of the Effective Date, Defendants shall develop and install a pretreatment system and infiltration basin to capture storm water from the Facilities and infiltrate it on the area currently occupied by Smart Parts. The site-specific pretreatment and infiltration system shall be capable of containing and infiltrating the volume of runoff generated by a 25-year, 24-hour rain event ("Design Storm") for the Fontana area. Based on NOAA's Precipitation Frequency Data Server estimates for Fontana Station ID: 79-2996, the amount is 4.85 inches. Site-specific treatment will include metal sorbing socks (e.g. Filtrexx Metal Sorb, oliophilic socks, or similar) in addition to polymer flock socks. System performance will be measured using the data generated by the rain gauge located at American Arrow. Following the complete implementation of pretreatment and the infiltration basin, discharges from the Facilities

1  occurring as a result of precipitation that exceeds the Design Storm shall not be required

2  to meet the Numeric Limits in Table 1.

3         vi.  Within sixty (60) days of the Effective Date, Defendants shall seal

4  each existing or intermittent discharge points/locations at the Facility. Defendant shall

5  install an overflow bypass above the infiltration basin to allow for discharge of storm

6  water from the Facility during storm events greater than the Design Storm.

7         vii.  To ensure there are no unauthorized non-stormwater discharges, non-

8  storm water discharges from the Facilities not authorized by the Storm Water Permit shall

9  be considered a breach of this Consent Decree; and

10         viii.  Beginning on the Effective Date or the date of installation, Defendants

11  shall maintain all structural BMPs at the Facility in good operating condition and shall

12  promptly repair any damaged or degraded structural BMPs.

13      15.  **Infiltration Basin and Property Line Inspections and Monitoring**

14  **Requirements**. Following the installation of the infiltration basin and curbing described

15  in paragraphs 14.iv. and i, respectively, Defendants shall:

16         i.  <u>Infiltration Basin Inspections:</u>  Within thirty (30) days after the

17  installation of the Infiltration Basin, and between September 1 and October 1 of each

18  subsequent year, Defendants shall inspect any storm drain inlets, catch basins, discharge

19  and sampling points, filtration/pretreatment devices, curbing or functional equivalent, and

20  other BMPs in place at the Facility. Defendants shall promptly clean, as needed, each

21  drain inlet, catch basin, discharge and sampling point, filtration/pretreatment device, and

22  other BMPs in order to remove any accumulated dust, sediment, solids, or debris;

23         ii.  <u>Infiltration Basin and Property Line Maintenance and Cleaning:</u>  On a

24  weekly basis between October 1 to May 31 of each year ("Wet Season"), Defendants

25  shall inspect all infiltration basins, discharge and sampling points, filtration/pretreatment

26  devices, curbing or functional equivalent, and other BMPs in place at their Facilities to

27  ensure that they are not in a condition that would materially impair their efficacy, and

28

1    clean out accessible deposited sediment or debris. Defendants shall properly dispose of

2    any dust, sediment, debris, or other removed pollutants; and

3                      iii.   <u>Log of Infiltration Basin and Property Line Inspections, Maintenance</u>

4    <u>and Cleaning</u>:  Defendants shall prepare and maintain a log of the Infiltration Basin and

5    Property Line Inspections, Maintenance and Cleaning described herein ("Maintenance

6    Log"). The Maintenance Log shall indicate the staff who completed the maintenance

7    activity, date, and time of the inspection, as well as, observations made by the staff

8    member. The Maintenance Log shall be made available for inspection by Waterkeeper at

9    any site inspection or otherwise within three (3) business days advance request by

10   Waterkeeper.

11       16.      **Employee Training.** Within thirty (30) days of the Effective Date,

12   Defendants shall develop and implement a training program, including any training

13   materials needed for effective implementation of the training program, for the Facility

14   ("Training Program"). The Training Program shall ensure: (1) that there are sufficient

15   number of employees delegated to achieve compliance with the Industrial Stormwater

16   Permit and this Consent Decree, and (2) that these employees are properly trained to

17   perform the activities required by the Industrial Stormwater Permit and this Consent

18   Decree. Such Training Program shall be specified in the SWPPP.  At a minimum, the

19   Training Program shall require the following:

20                   i.  **Non-Storm Water Discharge Training**. Defendants shall train all

21   employees on the Storm Water Permit's prohibition of non-storm water discharges so that

22   employees know what non-storm water discharges are, how to detect them, and how to

23   prevent them;

24                   ii.  **BMP Training.**  Defendants shall train all employees on the BMPs

25   included in this Consent Decree and the SWPPP to ensure that BMPs are implemented

26   effectively and on schedule. Employees shall also be trained to identify structural BMP

27   deficiencies and maintenance. Defendants shall train individual employees on their

28

1  specific responsibilities in implementing BMPs. The training must include proper

2  handling (collection, storage and disposal) of oil, anti-freeze, and solvents.

3          iii.  **Language.**  Defendants shall conduct the Training Program in the

4  language or languages in which all employees participating are fluent;

5          iv.  **Sampling Training.**  Defendants shall designate an adequate number

6  of employees necessary to collect stormwater samples as required by this Consent

7  Decree. The Training Program shall include the proper sampling protocols to ensure

8  stormwater samples are properly collected, stored, and submitted to a certified laboratory;

9          v.  **Visual Observation Training.**  Defendants shall provide training on

10  how and when to properly conduct visual observations to all employees performing

11  visual observations at their Facilities. The training will be provided by a private

12  consultant or representative of the Defendant and shall be repeated as necessary to ensure

13  Industrial Stormwater Permit compliance. All new staff will receive this training before

14  assuming responsibilities for implementing the SWPPP. Defendants shall maintain

15  training records to document compliance with this paragraph, and shall provide

16  Waterkeeper with a copy of these records within fourteen (14) days of a written request;

17          vi.  Storm Water Discharge Observations. During the life of this Consent

18  Decree, Defendants shall conduct visual observations at each discharge location during

19  every rain event that produces a discharge;

20          vii.  Non-Storm Water Discharge Observations. During the life of this

21  Consent Decree, Defendants shall conduct monthly non-storm water visual observation at

22  each discharge location; and

23          viii.  Visual Observation Records. Defendants shall maintain observation

24  records to document compliance with this section, and shall provide Waterkeeper with a

25  copy of these records within fifteen (15) days of receipt of a written request from

26  Waterkeeper for its records.

27          ix.  **Employees**. All employees at the Facilities shall participate in the

28  Training Program within thirty (30) days of the Effective Date of this Consent Decree

1 | and annually thereafter.  New employees shall participate in the Training Program within
2 | thirty (30) days of their hiring date;

3 |     x.  **Knowledgeable Representative.** The Training Program shall be
4 | provided by a private consultant or representative of Defendants who is familiar with the
5 | requirements of this Consent Decree and the Industrial Stormwater Permit;

6 |     xi.  **Training Records.** Defendants shall maintain training records to
7 | document compliance with this section, and shall provide Waterkeeper with a copy of
8 | these records within fourteen (14) days of receipt of a written request; and

9 |     xii.  **Integration of Employee Training into SWPPP.** If and when
10 | appropriate, Defendants shall integrate any new training requirements resulting from this
11 | Consent Decree into their Facility SWPPP. Defendants shall also update the SWPPP, if
12 | and when appropriate, to identify the positions responsible for carrying out stormwater
13 | management, monitoring, sampling, and SWPPP implementation.

14 |   17.  Storm Water Pollution Prevention Plan

15 |     i.  Within thirty (30) days of the Effective Date, Defendants shall amend
16 | their Facility SWPPP to incorporate the requirements and BMPs set forth in this Section I
17 | and Section X of the Industrial Stormwater Permit and submit the updated SWPPP to
18 | Waterkeeper within ten (10) business days thereafter.

19 |     ii.  **Waterkeeper's Review of SWPPP.** Waterkeeper shall have thirty
20 | (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.
21 | Within thirty (30) days of notification by Waterkeeper of any proposed changes to the
22 | SWPPP, Defendants shall make all of Waterkeeper's changes to the amended SWPPP
23 | unless Defendants timely request a meet and confer in accordance with paragraph 46 to
24 | resolve any concerns.  Compliance with the SWPPP, as amended in accordance with this
25 | Paragraph, shall, at all times, be a requirement of this Consent Decree.

26 |     iii.  Defendants shall revise their Facility SWPPP if there are any material
27 | changes in their Facility's operations, including, but not limited to, changes to stormwater

28 |

discharge points or BMPs.  These SWPPP revisions shall occur within forty-five (45) days of the changes in operations.

              **iv.  Site Map**:  Within thirty (30) days of the Effective Date, Defendants shall update the Site Map included in their Facility SWPPP to comply with the Industrial Stormwater Permit, Section X.E. Specially, the Site Map shall clearly denote (a) known or suspected drop inlets, (b) ground type (pervious or impervious), (c) berms and the materials they are composed of, (d) discharge points, (e) sampling points, (f) sand bag locations, and (g) all other physical structures or items relevant under the Industrial Stormwater Permit and this Consent Decree. During the term of the Consent Decree, if Defendants makes significant changes to their Facility, such as moving a discharge or sampling point, modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs, Defendants shall update the SWPPP within forty-five (45) days and submit the revised SWPPP to Waterkeeper, Regional Water Board and State Water Resources Control Board, consistent with the requirements of Paragraph 18, below.

    18.    **Additional BMPs**:  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first Wet Season of the agreement. If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the numeric limits in Table 1, or otherwise do not meet water quality standards, Defendants shall propose additional BMPs as part of any Action Plan prepared in accordance with paragraph 27.

## IV.    SAMPLING, MONITORING, INSPECTION & REPORTING

    19.    **Sampling Program - Stormwater**:  Defendants shall collect storm water samples from each discharge location at the Facility for every discharge during the term of the Consent Decree. For purposes of this Consent Decree, this includes any storm water discharge occurring during the Facilities' operating hours, or, if storm water is stored onsite prior to discharge, whenever storm water is released outside these hours.

1  Any failure to sample a discharge from each discharge location at the Facility shall be

2  documented and submitted to Plaintiffs within five (5) days of the date a sample could

3  have been collected but was not. Defendant shall analyze the samples for the constituents

4  identified in Table 1. Defendants shall use a state certified laboratory to conduct all

5  analysis pursuant to this Consent Decree. Defendants shall select laboratories and

6  analytical limits such that, at a minimum, the method detection limits are below the

7  Numeric Limits in Table 1.

8      20.      **Sampling Program – Groundwater**: Defendants shall conduct monitoring

9  of storm water infiltrating to groundwater following the installation of the infiltration

10  basin. Monitoring shall continue for the duration of the Consent Decree in accordance

11  with the Groundwater Monitoring Work Plan. The Groundwater Protection Monitoring

12  Plan shall ensure the installation of pre-treatment BMPs upgradient of the infiltration

13  basin with sampling access before and after treatment and discharge to the infiltration

14  basin so as to measure the performance of pre-treatment BMPs and the quality of storm

15  water percolating to ground water. The Groundwater Monitoring Protection Plan shall

16  also set forth the sampling procedures to ensure samples taken are representative of

17  percolating storm water. Defendants shall collect samples of infiltrating storm water at

18  the site from at least five (5) storm events per year. Samples shall be analyzed for at least

19  the contaminants identified in paragraph 29 as follows: (a) Defendants shall analyze

20  storm water before and after pre-treatment for the following constituents: cadmium,

21  copper, aluminum, chromium, mercury, nickel, lead, TPHg, TPHd and TPH mo (gas,

22  diesel, and motor oil); and (b) at least once per year, Defendants shall analyze samples

23  for arsenic, beryllium, cobalt, hexavalent chromium, benzene, toluene, ethylbenzene, and

24  xylene. Waterkeeper shall have twenty one (21) days to review and comment on the

25  Ground Water Protection Monitoring Plan. Defendant shall have fourteen (14) days to

26  accept Waterkeeper's comments and incorporate them into the Groundwater Protection

27  Monitoring Plan, or respond to Waterkeeper's comments in writing, explaining why the

28  comments were not accepted and incorporated. Any disputes as to the adequacy of the

1  Groundwater Protection Monitoring Plan shall be resolved pursuant to the dispute
2  resolution provisions of this Consent Decree.

3      21.      **Waterkeeper's Review of Revised MR&P.** Within thirty (30) days of the
4  Effective Date of this Consent Decree, the Defendants shall revise their M&RP for the
5  Facilities to incorporate the requirements of this Consent Decree and the Storm Water.
6  The revised M&RP shall require samples collected from the Facilities' storm water
7  discharges pursuant to the Storm Water Permit are analyzed for the constituents identified
8  in Table 1 in addition to any other constituents required by the Storm Water Permit.
9  Defendants' shall submit the revised M&RP to Waterkeeper for review and comment as
10 soon as it is completed but in any event no later than thirty (30) days from the Effective
11 Date. Waterkeeper shall provide comments, if any, to Defendants within thirty (30) days
12 after receipt of the M&RP. Defendants shall incorporate Waterkeeper's comments into
13 the M&RP, or shall justify in writing why any comment is not incorporated within thirty
14 (30) days of receiving comments. Any disputes as to the adequacy of the M&RP shall be
15 resolved pursuant to the dispute resolution provisions of this Consent Decree.

16     22.      **Additional Revisions to M&RP**: Defendants shall revise the M&RP if
17 there are any changes in a Facility's discharge point(s), if Defendants discovers a change
18 in a Facility's storm water discharge point(s), or as applicable to incorporate sample
19 sampling or monitoring change in any Action Plan(s). Defendants shall submit any
20 revised M&RP to Waterkeeper for review and comment within fifteen (15) days of
21 completion. Waterkeeper shall provide comments, if any, to Defendants within thirty (30)
22 days of receipt of any revised M&RP, or shall justify in writing why any comment is not
23 incorporate within thirty (30) days of receiving comments. Any disputes as to the
24 adequacy of the M&RP shall be resolved pursuant to the dispute resolution provisions of
25 this Consent Decree.

26     23.      **Sampling.** The following storm water monitoring procedures shall be
27 implemented at the Facilities:

28

i. <u>Qualifying Storm Event.</u> Under this Consent Decree, a qualifying storm event ("QSE") is defined as a rain event sufficient to allow collection of storm water for sampling not preceded by 48 hours of the occurrence of a previous QSE.

ii. <u>Frequency.</u> During the life of this Consent Decree, Defendants shall collect stormwater samples once per year before pre-treatment and five times per year after pre-treatment or at the infiltration bypass, if a discharge is occurring, as precipitation allows. However, in any event, the first QSE of the reporting year shall be sampled.

iii. <u>Location.</u> During the life of this Consent Decree, Defendants shall collect samples before pre-treatment, after pre-treatment, and the infiltration basin bypass, if discharging.

iv. <u>Parameters.</u> All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 for storm water sampling, and for the parameters listed in paragraph 20 for groundwater sampling. Samples shall be analyzed for total recoverable and dissolved.

v. <u>Change of Industrial Activities.</u> Should industrial processes materially change at their Facilities, Defendants shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in their Facility's stormwater discharges in significant quantities as a result of the changed industrial processes. Defendants shall notify Waterkeeper of any such changes within thirty (30) days of such a change.

vi. <u>Lab.</u> Except for pH samples, Defendants shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. pH will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

vii.  <u>Detection Limit</u>. The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the values set forth in Table 1

viii.  <u>Holding Time</u>. All samples collected from the Facilities shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136, excepting pH, which will be analyzed onsite using a calibrated portable instrument for pH in accordance with accompanying manufacturer's instructions.

ix.  <u>Lab Reports</u>. Defendants shall request the sample-analysis results and associated chain of custody forms be reported to them within twenty-eight (28) days of laboratory receipt of the sample.

24.    **Reports to Waterkeeper**.  After the Effective Date of this Consent Decree, Defendants shall provide complete results from sampling and analysis to Waterkeeper within ten (10) calendar days of receipt of the laboratory report from each sampling event.

25.    **Sampling Reduction**. Defendants may discontinue analyzing stormwater samples collected pursuant to this Consent Decree at any location(s) for a constituent listed in Table 1 that is not otherwise required by the Industrial Stormwater Permit, if the sample result for the Table 1 constituent is not detected above the limits stated in Table 1 for four (4) consecutive sample results, and Defendants have collected and analyzed the sample pursuant to this Consent Decree.

26.    **Numeric Limits**. Contaminants in discharges shall not exceed the limits ("Numeric Limits") in Table 1[1], and any discharge from the Facilities in excess of, or outside the range of, the Numeric Limits in Table 1 is a breach of this Consent Decree.

---

[1] Several of the Numeric Limits are hardness dependent. Table 1 uses an assumed hardness range of 75-100 mg/L CaCO3. Defendant shall adjust the limit using the methods provided in Appendix J of the 2008 EPA MSGP (Multi-Sector General Permit).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Table 1

| Contaminant | Numeric Limit<br>(All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Oil and grease (O&G) | 15 |
| Chemical Oxygen Demand | 30 |
| Total Recoverable Aluminum | 0.75 |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Mercury | 0.0024 |
| Total Recoverable Zinc | **0.110** |
| Total Recoverable Copper | **0.0123** |
| Total Recoverable Lead | **0.069** |
| Total Recoverable Arsenic | **0.1685** |
| Dissolved Cadmium | **0.0043** |
| Dissolved Nickel | **0.470** |
| Dissolved Silver | **0.0034** |
| pH | 6.5 to 8.5 s.u. |

27.     **Action Plan for Table 1 Exceedances**: Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if any sampling for any contaminant during the Wet Season demonstrates that any contaminant is found exceding the Table 1 limits. Discharges from the Facilities occurring as a result of precipitation that exceeds the Design Storm shall not implicate the requirement for Defendant to prepare an Action Plan. In any year that an Action Plan is required, it shall be submitted by following July 1. Each Action Plan submitted shall include at a

1  minimum: (1) the identification of the pollutant(s) discharged in excess of the Numeric

2  Limit(s); (2) an assessment of the source of each pollutant exceedance; (3) the

3  identification of additional BMPs, including treating storm water prior to discharge from

4  the Facility, that will be implemented to achieve compliance with the Numeric Limit(s);

5  and (4) time schedules for implementation of the proposed BMPs. The time schedule(s)

6  for implementation shall ensure that all BMPs are implemented as soon as possible, but

7  in no case later than October 1 (prior to the start of the next Wet Season). If structural

8  BMPs are proposed, and agreed to between the Parties, which require agency approval,

9  then Defendants shall contact Waterkeeper to request an extension of the deadline, if

10  necessary, to implement the structural BMPs. Waterkeeper's consent to Defendant's

11  requested extension shall not be unreasonably withheld. Anytime an Action Plan is

12  completed after Waterkeeper's review, as set forth in paragraph 30 below, Defendant

13  shall also revise its M&RP and SWPPP as applicable within thirty (30) days.

14      28.      **Waterkeeper Review of Action Plan**: Waterkeeper shall have thirty (30)

15  days from receipt to propose revisions to the Action Plan.  However, if Waterkeeper

16  notifies Defendants within thirty (30) days of receipt of the Action Plan that it is unable

17  to provide comments within thirty (30) days, Waterkeeper shall have an additional fifteen

18  (15) days to propose revisions to the Action Plan. Within thirty (30) days of receiving

19  Waterkeeper's proposed revisions, Defendants shall consider each of Waterkeeper's

20  recommended revisions to the Action Plan and accept them or timely request to meet and

21  confer, in accordance with this Consent Decree. Defendants shall notify Waterkeeper in

22  writing when an Action Plan has been fully implemented.

23      29.      **Infiltration Basin - Groundwater Action Plan**: If groundwater monitoring

24  at the Facility results in the detection of compounds above the maximum contaminant

25  levels (*see* http://water.epa.gov/drink/contaminants/index.cfm) for arsenic, beryllium,

26  cadmium, cobalt, copper, aluminum, hexavalent chromium, chromium, mercury, nickel,

27  lead, benzene, toluene, ethylbenzene, and xylene, or RWQCB Groundwater Screening

28  levels for TPHg, TPHd and TPH mo (gas, diesel, and motor oil) see

1  http://waterboards.ca.gov/sanfranciscobay/water_issues/programs/ESL/Lookup_Tables_

2  Dec_2013_Detail.pdf (Attached as Exhibit A), then the Defendant must develop and

3  implement a Groundwater Action Plan to control the pollutants in storm water that are

4  infiltrated at the Facility. The Groundwater Protection Action Plan may include

5  recommendations for additional monitoring to assess the potential risk, including

6  installation and monitoring of lysimeters. The Groundwater Action Plan shall also

7  include an evaluation of both the source control implemented to prevent pollutant

8  exposure to storm water and pre-treatment measures implemented prior to infiltration.

9  The Groundwater Action Plan must be submitted within thirty (30) days of Defendant's

10  receipt of sampling data resulting in the Detection Event.

11      30.      **Waterkeeper Review of Groundwater Protection Action Plan:**

12  Waterkeeper shall have thirty (30) days upon receipt of Defendant's Groundwater Action

13  Plan to provide Defendant with comments. Defendant shall have until October 1 (prior to

14  the next Wet Season) to implement any additional non-structural or structural BMPs

15  agreed upon by Defendants and Waterkeeper. Within fifteen (15) days from the date

16  Waterkeeper comments on Defendants' Groundwater Action Plan, Defendant shall

17  provide Waterkeeper with a written explanation if Defendant refuses to develop and/or

18  implement any of Waterkeeper's recommended additional BMPs. Any dispute as to the

19  adequacy of the Groundwater Action Plan shall be resolved pursuant to the dispute

20  resolution provisions of this Consent Decree, set out in paragraph 46 below. If any

21  structural BMPs require any agency approval, then Defendant shall contact Waterkeeper

22  to request an extension of the deadline, if necessary, to implement the structural BMPs

23  requiring agency approval. Waterkeeper's consent to Defendants' requested extension

24  shall not be unreasonably withheld.

25      31.      Defendants shall implement the Action Plan(s) adopted pursuant to this

26  Consent Decree as an obligation of this Consent Decree.

27      32.      Defendants shall diligently file and pursue all required local agency

28  applications for permits and/or approvals for the BMPs included in any Action Plan.

1   Defendants shall further diligently pursue the procurement of contractors, labor, and
2   materials to complete all BMPs by the October 1 deadline.

3       33.      Within thirty (30) days after BMPs set forth in an Action Plan pursuant to
4   this Consent Decree are implemented, Defendants shall amend the Facility SWPPP to
5   include all BMP revisions or additions not otherwise already implemented and included
6   in the SWPPP and shall provide Waterkeeper with a copy of such revised SWPPP.

7       34.      **Duty to Evaluate**. During each Wet Season, Defendants has an ongoing
8   obligation to evaluate the BMPs implemented at the Facility and included in this Consent
9   Decree and any current or previous Action Plans, and, if Defendants have exceeded
10  Target Levels, make attempts to reduce the concentrations to Target Levels or otherwise
11  meet BAT or BCT, as appropriate, for the remainder of the Wet Season. Defendants shall
12  use the results from subsequent stormwater samples as they become available to assist
13  with their ongoing evaluation of the effectiveness of BMPs.

14      35.      **Site Inspections**.  During the Term of this Consent Decree, Defendants shall
15  permit representatives of Waterkeeper to perform up to two (2) physical inspections per
16  year of the Facility during operating hours ("Site Inspection"). Waterkeeper shall provide
17  Defendants twenty-four (24) hours' notice in advance of such Site Inspections.
18  Waterkeeper shall comply with all safety instructions provided to Waterkeeper by
19  Defendants' employees during all Site Inspections. During Site Inspections, Waterkeeper
20  shall be allowed to inspect and sample any stormwater discharges, logs, and take photos
21  and/or videos.

22      36.      **Data Reporting**: During the Term of this Consent Decree, Defendants shall
23  provide Waterkeeper with all laboratory analyses related to compliance with this Consent
24  Decree within fifteen (15) days of Defendants' receipt of such data. In addition,
25  Defendants shall provide rain gauge data records described in paragraph 14 to
26  Waterkeeper within ten (10) days of a written request by Waterkeeper to Defendants.

27      37.      **Document Provision**:  During the Term of this Consent Decree, Defendants
28  shall provide Waterkeeper with a copy of all documents and communications related to

1  water quality submitted to the Regional Water Board, the State Water Board, and/or any
2  Federal, State, local agency, county, or municipality. Such documents and reports shall
3  be transmitted to Waterkeeper concurrently as they are sent to the agencies and/or
4  municipalities. Any correspondence related to water quality received by Defendants from
5  any Federal, State, local agency, county, or municipality shall be provided within three
6  (3) business days of receipt by Defendants.

7      38.     **Transfer of Interest**: The sale or transfer of ownership of any portion of the
8  Facility does not relieve the Defendants of their obligations under this Consent Decree.
9  Not later than thirty (30) days prior to sale or transfer of ownership of any portion of the
10 Facility, Defendants shall give written notice of this Consent Decree to each purchaser or
11 successor in interest. Defendants shall also give written notification to Waterkeeper, in
12 accordance with paragraph 67, of the anticipated sale or transfer of ownership or
13 operation of the Facility at least thirty (30) days prior to the scheduled date of such sale
14 or transfer and may seek from the Court a modification of this Consent Decree that would
15 transfer responsibility for compliance with some or all of these provisions to its
16 successor. The Court shall grant such request if the successor is ready, willing, and able
17 to fully implement obligations the successor would assume under this Consent Decree.
18 In the event that Defendants transfer any operation of any portion of the Facility,
19 Defendants are obligated to ensure Waterkeepers access to the entire facility for any site
20 inspection conducted pursuant to this Consent Decree.

21
22     **V.     ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS,**
    **STIPULATED PENALTIES, COMPLIANCE MONITORING AND**
23     **INTEREST**

24     39.     **Environmental Mitigation Project**: To remediate environmental harms
25 resulting from allegations in the Complaint, Defendants agrees to make a payment of Ten
26 Thousand Dollars ($10,000) to the Rose Foundation for Communities and the
27 Environment to fund environmental project activities that will benefit the Southern
28 California Bight and its watershed. The payment shall be made at the end of the payment

1   term in monthly increments until the total amounts to $10,000. Payment shall be made to

2   the "Rose Foundation for Communities and the Environment" and delivered via certified

3   mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland,

4   California 94612-2218. Defendants shall provide Waterkeeper with a copy of such

5   payment at the time it is made.

6       40.     **Waterkeeper's Litigation Costs**: To partially reimburse Waterkeeper for

7   its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys'

8   fees, and other costs incurred as a result of investigating and filing the lawsuit, and

9   negotiating this Consent Decree, Defendants shall pay a total of Sixty Five Thousand

10   Dollars ($65,000).

11       41.     **Payment Schedule**: Waterkeeper has agreed to Defendants' structured

12   payment schedule requiring an initial payment of Nine Thousand Six Hundred Dollars

13   ($9,600), followed by thirty-five (35) equal monthly payments of Two Thousand One

14   Hundred Fifty Four Dollars and Twenty Eight Cents ($2,154.28).  Although Defendants

15   will be jointly and severally liable for the entire settlement amount, Defendants may send

16   two checks each month which must total $2,154.28.  SmartParts will submit a monthly

17   check in the amount of $607.14 and American Arrow, LLC and American Dismantling,

18   Inc will submit a monthly check in the amount of $1547.14.  The first installment shall be

19   made within ten (10) days of the end of the 45-day Federal Agencies review period

20   described in paragraph 7 above or within ten (10) days of the date the Federal Agencies

21   inform the Court that they have no objections to entry of this Consent Decree, whichever

22   is sooner. Payment to Waterkeeper shall cease after satisfying payments made pursuant to

23   paragraphs 40 and 43. Installment payments shall then be made pursuant to paragraph 39.

24   Payments to Waterkeeper shall be made via wire transfer or check, made payable to:

25   "Orange County Coastkeeper" and delivered by certified mail or overnight delivery,

26   unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue,

27   Suite F-110, Costa Mesa, CA 92626.

28       42.     **Stipulated Penalties**: Defendants shall make a remediation payment of Five

Hundred Dollars ($500) for each missed deadline included in the Consent Decree or the failure to collect a storm water sample required under this Consent Decree after the Effective Date. Payments for missed deadlines shall be made to "Rose Foundation for Communities and the Environment" and delivered via certified mail, overnight delivery, or wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. Defendants shall provide Waterkeeper with a copy of each such payment at the time it is made.

43.     **Compliance Monitoring and Oversight**: Defendants agree to partially defray Waterkeeper's monitoring of Defendants' compliance with this Consent Decree in the amount of Ten Thousand Dollars ($10,000). Payment shall be made pursuant to paragraph 41 of the Consent Decree. .

44.     **Interest on Late Payments:** Defendants shall pay interest on any payments, fee or costs owed to Waterkeeper under this Consent Decree that Waterkeeper has not received by the date due.  The interest shall accrue starting the first day after the payment is due and shall be computed at 1.5% per month (18% per year).

**VI.     DISPUTE RESOLUTION**

45.     The Court shall retain jurisdiction over this matter for the life of the Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of the Consent Decree. The Court shall have the authority to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

46.     If a dispute under this Consent Decree arises or the Parties believe that a breach of this Consent Decree has occurred, they shall follow the following procedure:

i.     <u>Meet and Confer</u>. A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties of the matter(s) in dispute. The Parties shall schedule a meet and confer in good faith (either telephonically or in person) within ten (10) days from the date of the notice. The Settling

1 | Parties may elect to extend this time in an effort to resolve the dispute without court
2 | intervention.

3 |             ii.  If the Settling Parties fail to meet and confer, or cannot resolve a
4 | dispute through the informal meet and confer process, the Settling Parties agree to request
5 | a settlement meeting or conference before the Magistrate Judge assigned to this action.
6 | The Settling Parties agree to file any waivers necessary for the Magistrate Judge to
7 | preside over any settlement meeting or conference. In the event that the Settling Parties
8 | cannot resolve the dispute within sixty (60) days of the initial settlement meeting or
9 | conference with the Magistrate Judge, the Settling Parties agree that the dispute may be
10 | submitted for formal resolution by filing a motion before the United States District Court
11 | for the Central District of California. The Settling Parties agree to request an expedited
12 | hearing schedule on the motion.

13 |             iii.  In the event a dispute is submitted for formal resolution by filing a
14 | motion, the Settling Parties agree to execute a Stipulated Protective Order allowing the
15 | use of information gathered during site inspections conducted pursuant to this Consent
16 | Decree in support of such motion upon the stipulated conditions articulated in the
17 | Stipulated Protective Order. The stipulated conditions of the Stipulated Protective Order
18 | shall be consistent with the requirements of Federal Rule of Civil Procedure 26(c) and
19 | Civil Local Rule 79-5.

20 |             iv.  The Parties shall be entitled to seek fees and costs incurred in any
21 | such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water
22 | Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

23 |             v.  For informal or formal dispute resolution, Defendants bears the
24 | burden of proving the BMPs constitute BAT/BCT or are in compliance with the Consent
25 | Decree.

## VII.   JURISDICTION OVER PARTIES AND SUBJECT MATTER OF CONSENT DECREE

47.      **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate

1   that the United States District Court of California, Central District of California, has

2   jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties

3   stipulate that venue is appropriate in the Central District of California and that

4   Waterkeeper has standing to bring the Complaint or any subsequent action or motion

5   pursuant to the Dispute Resolution procedures herein.

6        48.        **Jurisdiction to Enforce Consent Decree.**  The Court referenced above shall

7   retain jurisdiction over the Parties and subject matter of this Consent Decree for the

8   purpose of adjudicating all disputes among the Parties that may arise under the provisions

9   of this Consent Decree.  The Court shall have the power to enforce this Consent Decree

10  with all available legal and equitable remedies.

11       49.        **Dismissal of Complaint:**  If there is no objection by DOJ to this Consent

12  Decree, the Parties shall (a) request the approval and entry of this Consent Decree in the

13  exact form presented to DOJ, and (b) concurrently stipulate to and request dismissal of

14  this action with prejudice. Such dismissal shall not affect the rights and obligations of the

15  Parties under this Consent Decree, nor shall it affect the power of the Court to enforce

16  this Consent Decree.

17  **VIII.      MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

18       50.        **Waterkeeper's Release**:  Waterkeeper, on its own behalf and on behalf of

19  its officers, directors, employees, parents, subsidiaries, affiliates and each of their

20  successors and assigns, releases Defendants, their officers, directors, employees,

21  members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and

22  other representatives, from and waives all claims raised in the 60-Day Notice and/or the

23  Complaint, including all claims for fees (including fees of attorneys, experts, and others),

24  costs, expenses, or any other sum incurred or claimed or which could have been claimed

25  for matters included in the 60-Day Notice and/or the Complaint.

26       51.        **Defendants' Release**:  Defendants, on its own behalf and on behalf of its

27  officers, directors, employees, members, parents, subsidiaries, affiliates, or their

28  successors or assigns release Waterkeeper and its officers, directors, employees,

1    members, parents, subsidiaries, and affiliates, and each of their successors and assigns

2    from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the

3    Complaint, including all claims for fees (including fees of attorneys, experts, and others),

4    costs, expenses or any other sum incurred or claimed or which could have been claimed

5    for matters included in the 60-Day Notice and/or the Complaint.

6       52.    Nothing in this Consent Decree limits or otherwise affects Waterkeeper's

7    right to address or take any position it deems necessary or appropriate in any formal or

8    informal proceeding before a regulatory agency, or any other judicial or administrative

9    body on any other matter relating to Defendants' compliance with the Storm Water

10   Permit or the Clean Water Act occurring or arising after the Effective Date of the

11   Consent Decree.

12   **IX.    MISCELLANEOUS PROVISIONS**

13      53.    **No Admission of Liability**: Neither this Consent Decree, the

14   implementation of additional BMPs or any payment pursuant to the Consent Decree shall

15   constitute or be construed as a finding , adjudication, admission or acknowledgement of

16   any fact, law, rule or regulation. Defendants maintain and reserve all defenses they may

17   have to any alleged violations that may be raised in the future.

18      54.    **Execution in Counterparts**: The Consent Decree may be executed in any

19   number of counterparts, all of which together shall constitute one original document.

20   Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be

21   deemed to be originally executed counterparts of this Consent Decree.

22      55.    **Signatures**: The Parties' signatures to this Consent Decree transmitted by

23   facsimile or electronic mail transmission shall be deemed binding.

24      56.    **Construction**: The language in all parts of this Consent Decree shall be

25   construed according to its plain and ordinary meaning, except as to those terms defined in

26   the Industrial Stormwater Permit, the Clean Water Act, or specifically herein.  The

27   captions and paragraph headings used in this Consent Decree are for reference only and

28   shall not affect the construction of this Consent Decree.

1    57.     **Authority**:  The undersigned representatives for Waterkeeper and

2  Defendants each certify that he/she is fully authorized by the party whom he/she

3  represents to enter into the terms and conditions of this Consent Decree.

4    58.     **Integration Clause**:  This is an integrated Consent Decree. This Consent

5  Decree is intended to be a full and complete statement of the terms of the agreement

6  between the Settling Parties and expressly supersedes any and all prior oral or written

7  agreements, covenants, representations and warranties, express or implied, oral or

8  written, of the Parties concerning the subject matter of this Consent Decree.

9    59.     **Severability**:  In the event that any of the provision, paragraph, section, or

10  sentence of this Consent Decree are held by a court to be unenforceable, the validity of

11  the enforceable provisions shall not be adversely affected.

12    60.     **Choice of Law**:  This Consent Decree shall be governed by the laws of the

13  United States.

14    61.     **Full Settlement**:  This Consent Decree constitutes a full and final settlement

15  of this matter.

16    62.     **Diligence**: Defendants shall diligently file and pursue all required permit

17  applications for the structural BMPs and shall diligently procure contractors, labor, and

18  materials needed to complete all structural BMPs by the required deadlines

19    63.     **Effect of Consent Decree**:  Compliance with this Consent Decree does not

20  mean Defendants is complying with the Industrial Stormwater Permit, Clean Water Act,

21  or any other law, rule, or regulation.

22    64.     **Negotiated Agreement**:  The Parties have negotiated this Consent Decree,

23  and agree that it shall not be construed against the party preparing it, but shall be

24  construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and

25  ambiguity shall not be interpreted against any one party.

26    65.     **Modification of the Agreement**:  This Consent Decree, and any provisions

27  herein, may not be changed, waived, or discharged, or terminated unless by a written

28  instrument, signed by each of the Parties and approved by the Court.

1    66.    **Assignment**:  Subject only to the express restrictions contained in this

2    Consent Decree, all of the rights, duties and obligations contained in this Consent Decree

3    shall inure to the benefit of and be binding upon the Parties, and their successors and

4    assigns.

5    67.    **Mailing of Documents to Waterkeeper/Notices/Correspondence**:  Any

6    notices or documents required or provided for by this Consent Decree or related thereto

7    that are to be provided to Waterkeeper pursuant to this Consent Decree shall be, to the

8    extent feasible, sent via electronic mail transmission to the e-mail addresses listed below

9    or, if electronic mail transmission is not feasible, via certified U.S. Mail with return

10   receipt, or by hand delivery to the following address:

11         Inland Empire Waterkeeper
12         c/o Orange County Coastkeeper
           Attention: Colin Kelly
13         3151 Airway Avenue, Suite F-110
14         Costa Mesa, California 92626
           E-mail:  colin@coastkeeper.org
15

16         Unless requested otherwise by Defendants, any notices or documents required or

17   provided for by this Consent Decree or related thereto that are to be provided to

18   Defendants pursuant to this Consent Decree shall, to the extent feasible, be provided by

19   electronic mail transmission to the e-mail addresses listed below, or, if electronic mail

20   transmission is not feasible, by certified U.S. Mail with return receipt, or by hand

21   delivery to the addresses below:

22         Jonathan Shardlow
23         c/o American Arrow, American Dismantling, and Smart Parts
           Gresham Savage Nolan & Tilden, PC
24         550 East Hospitality Lane, Suite 300
25         San Bernardino, CA 92408-4205
           Email: jonathan.shardlow@greshamsavage.com
26
27         Notifications of communications shall be deemed submitted on the date that they

28   are emailed, or postmarked and sent by first-class mail or deposited with an overnight

1 | mail/delivery service.  Any changes of address or addressees shall be communicated in
2 | the manner described above for giving notices.
3 |     68.      **Impossibility of Performance**:  No Party shall be considered to be in
4 | default in the performance of any of its obligations under this Consent Decree when
5 | performance becomes impossible due to circumstances beyond the Party's control,
6 | including without limitation any act of God, act of war or terrorism, fire, earthquake, and
7 | flood.  "Circumstances beyond the Party's control" shall not include normal inclement
8 | weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this
9 | Paragraph shall have the burden of establishing that it could not reasonably have been
10 | expected to avoid, and which by exercise of due diligence has been unable to overcome,
11 | the impossibility of performance.
12 |     The Parties hereto enter into this Consent Decree, Order and Final Judgment and
13 | submit it to the Court for its approval and entry as a final judgment.
14 |     **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree
15 | as of the date first set forth below.
16 |
17 | APPROVED AS TO CONTENT
18 |
19 | Dated: _MARCH 15___, 2016          By: _____
      Garry Brown
20 |                                    Inland Empire Waterkeeper
21 |
22 | Dated: _MARCH 15___, 2016          By: _____
      Garry Brown
23 |                                    Orange County Coastkeeper
24 |
25 |
26 | Dated: _____, 2016           By: _____
      Nick Artneyan
27 |                                    American Arrow, LLC
28 |

[Proposed] CONSENT DECREE          33          Case No. SACV15-01009 TJH (PLAx)

1 | mail/delivery service.  Any changes of address or addressees shall be communicated in
2 | the manner described above for giving notices.

3 |     68.   **Impossibility of Performance**: No Party shall be considered to be in
4 | default in the performance of any of its obligations under this Consent Decree when
5 | performance becomes impossible due to circumstances beyond the Party's control,
6 | including without limitation any act of God, act of war or terrorism, fire, earthquake, and
7 | flood.  "Circumstances beyond the Party's control" shall not include normal inclement
8 | weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this
9 | Paragraph shall have the burden of establishing that it could not reasonably have been
10 | expected to avoid, and which by exercise of due diligence has been unable to overcome,
11 | the impossibility of performance.

12 |     The Parties hereto enter into this Consent Decree, Order and Final Judgment and
13 | submit it to the Court for its approval and entry as a final judgment.

14 |     **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree
15 | as of the date first set forth below.

16 |

17 | APPROVED AS TO CONTENT

18 |

19 | Dated: _03 - 14_ , 2016        By:_____
20 |                                Garry Brown
                                   Inland Empire Waterkeeper
21 |

22 | Dated:_____, 2016         By:_____
23 |                                Garry Brown
                                   Orange County Coastkeeper
24 |

25 | Dated: _03-14-'_ , 2016        By: _____
26 |                                Nick Artneyan
27 |                                American Arrow, LLC

28 |

1    Dated:_____, 2016        By:_____
                                    Nick Artneyan
2                                   American Dismantling, Inc.

3

4

5    Dated:_____, 2016        By:_____
                                    Bridget Torres, DBA Smart Parts Auto & Truck
6                                   Dismantling

7

8

9

10

11   APPROVED AS TO FORM
                                    ORANGE COUNTY COASTKEEPER
12                                  INLAND EMPIRE WATERKEEPER

13

14   Dated:_____, 2016        By:_____
                                    Suma Peesapati
15                                  Attorney for Plaintiffs

16

17   Dated: March 15___, 2016       By: _____
                                    Colin Kelly
18                                  Attorney for Plaintiffs

19
                                    AMERICAN ARROW, LLC
20                                  AMERICAN DISMANTLING, INC.
                                    BRIDGET TORRES, DBA SMART PARTS
21                                  AUTO & TRUCK DISMANTLING

22

23   Dated:_____, 2016        By:_____

24
                                    Jonathan Shardlow
25                                  Attorney for Defendants

26

27

28

     [Proposed] CONSENT DECREE      34      Case No. SACV15-01009 TJH (PLAx)

Dated: 03-14, 2016

By: _____
Nick Artneyan
American Dismantling, Inc.

Dated: 03-14, 2016

By: _____
Bridget Torres, DBA Smart Parts Auto & Truck
Dismantling

APPROVED AS TO FORM

ORANGE COUNTY COASTKEEPER
INLAND EMPIRE WATERKEEPER

Dated: 03-16, 2016

By: _____
Suma Peesapati
Attorney for Plaintiffs

Dated: _____, 2016

By: _____
Colin Kelly
Attorney for Plaintiffs

AMERICAN ARROW, LLC
AMERICAN DISMANTLING, INC.
BRIDGET TORRES, DBA SMART PARTS
AUTO & TRUCK DISMANTLING

Dated: 3-14, 2016

By: _____

Jonathan Shardlow
Attorney for Defendants

1
2
3     The Consent Decree is hereby approved.
4
5     **IT IS SO ORDERED.**
6     Dated: May 11, 2016
7                                     Honorable Terry J. Hatter, Jr.
8                                     United States District Judge
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONSENT DECREE              35.      Case No. SACV15-01009 TJH (PLAx)